## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

———————————————————
)
LEEWARD CONSTRUCTION, INC.,   )
)
        Plaintiff,   )
)
      v.   )   No. 22-374C
)
THE UNITED STATES,   )   Filed: June 17, 2022
)
        Defendant,   )   Reissued: July 5, 2022[1]
)
and   )
)
MOHAWK VALLEY MATERIALS, INC.,   )
)
        Defendant-Intervenor.   )
———————————————————)

## OPINION AND ORDER

Plaintiff Leeward Construction, Inc. ("Leeward") filed this bid protest challenging the Army Corps of Engineers' ("Army") rejection of Leeward's bid as non-responsive. Leeward contends the Army erred as a matter of law in determining that a liability limitation in its bid bond significantly departed from the solicitation's requirements. Even if its bid bond were noncompliant, it claims in the alternative that the Army acted arbitrarily and capriciously because the alleged irregularity was immaterial and should have been waived, especially where the Army waived an irregularity in the awardee's bid. The Government and Defendant-Intervenor Mohawk Valley Materials, Inc. ("Mohawk") argue that the ambiguities of the bid bond language presented a defense to enforcement and the Army reasonably relied on decisions by the Government Accountability Office ("GAO") finding the same bid bond defective.

---

[1] The Court issued this opinion under seal on June 17, 2022, and directed the parties to file any proposed redactions by June 28, 2022. As the parties did not propose any redactions, the Court reissues the opinion publicly in full.

Before the Court are the parties' Cross-Motions for Judgment on the Administrative Record. For the reasons discussed below, the Court finds that Leeward is not entitled to judgment in its favor because: (1) its bid bond did not comply with the solicitation as a matter of law; (2) the defect in its bid bond was material and not subject to waiver; (3) Leeward has not stated a valid disparate evaluation challenge; (4) the defect in its bid bond created a defense to enforcement; and (5) the Army acted rationally in relying on two prior GAO decisions addressing the same bid bond language. Accordingly, the Government and Mohawk's Motions are **GRANTED**, and Leeward's Motion is **DENIED**.

## I.    BACKGROUND

### A.    Findings of Fact

On October 27, 2021, the Army issued Invitation for Bids No. W912BU22B0003 ("IFB") for maintenance and modification of the General Edgar Jadwin Dam in Honesdale, Pennsylvania. Admin. R. 263–95, ECF No. 17 (hereafter "AR").[2] The Army sought a contractor to replace the "riprap" (*i.e.*, stone facing) on the upstream face of the dam and install a new geosynthetic liner to protect the dam from erosion. AR 309. The project was scheduled to last 455 days. AR 263.

Six bidders submitted bids in response to the IFB. AR 1362–63. Of the six bidders, Leeward submitted the lowest bid at a cost of $3,887,454. *Id.* This was $1,112,401 less than the next lowest proposal submitted by Mohawk. *Id.* Leeward is a heavy and highway commercial construction contractor located in Honesdale, Pennsylvania. AR 1367–70. Leeward has been in the construction business for over 28 years and holds pre-qualifications with state agencies to perform earthwork, excavation, grading, and geotextile placement. AR 2015–16. The company

---

[2] For ease of reference, citations to the Administrative Record refer to the bates-stamped page numbers rather than the ECF page numbers.

had over $44 million in sales in 2019 and 2020, and it has surety bonding up to $60 million.  AR 1368, 1411.

The IFB incorporated Federal Acquisition Regulation ("FAR") 52.228-1(e), which requires bidders to include a bid guarantee (*i.e.*, bid bond) with their submission.  AR 290–91.  Bid bonds are designed to protect a contracting agency from an awardee's default by compensating the agency for costs incurred in reprocuring the contract or reissuing the award to a more expensive runner-up.  *See Matter of: G2G, LLC*, B-416502, 2018 WL 4679148, at *2 (Comp. Gen. Sept. 27, 2018); *see also* FAR 28.001 (defining "bid guarantee); FAR 28.101-2(b).   The FAR's bid guarantee provision reads in relevant part:

(a) Failure to furnish a bid guarantee in the proper form and amount, by the time set for opening of bids, may be cause for rejection of the bid.

(b) The bidder shall furnish a bid guarantee in the form of a firm commitment, e.g., bid bond supported by good and sufficient surety or sureties acceptable to the Government . . . .

(c) The amount of the bid guarantee shall be _____ percent of the bid price or _____, whichever is less.

(d) If the successful bidder, upon acceptance of its bid by the Government within the period specified for acceptance, fails to execute all contractual documents or furnish executed bond(s) within 10 days after receipt of the forms by the bidder, the Contracting Officer may terminate the contract for default.

(e) In the event the contract is terminated for default, the bidder is liable for any cost of acquiring the work that exceeds the amount of its bid, and the bid guarantee is available to offset the difference.

FAR 52.228-1.  The IFB set the bond amount at the lesser of 20 percent of the bid price or $3 million.  AR 291.

Before submitting its bid, Leeward sought clarification from the Army regarding the form of its bid bond.  AR 2535.  On November 29, 2021, Leeward emailed the contracting specialist who was listed in the IFB as the point of contact for requests for information to "confirm there is

not a special bid bond form" that the Army requires. *Id.*; *see* AR 269.  The contracting specialist followed up with a phone call to confirm that Leeward had all of the relevant IFB documents.  AR 2569.  Leeward sought additional clarification whether the Army would accept a bid bond on the American Institute of Architects Document A310, 2010 edition ("AIA Form A310").  *Id.*  The contracting specialist responded that there was no special form for bidders to use, and they needed only to include a bid bond of the requisite amount.  *Id.*  Leeward went on to submit a bid bond with a penal sum of $777,490.94 (20 percent of its bid price) using the AIA Form A310.  AR 1318. Every other bidder used Standard Form 24 ("SF 24"), the bid bond form provided in FAR 28.106-1.[3]  AR 1289, 1298, 1306, 1334, 1348.

The AIA Form A310 used by Leeward includes a provision that limits the liability of the bidder in the case of default to "the difference, not to exceed the amount of this Bond, between the amount specified in said bid and such larger amount for which the [contracting agency] may in good faith contract with another party[.]"  AR 1318.  In contrast, SF 24 states that "in the event of failure to excuse such further contractual documents and give such bonds, [the Principal] pays the Government for *any cost* of procuring the work which exceeds the amount of the bid."  AR 1334 (emphasis added).  The AIA Form A310 also includes a savings clause, which states in full:

> When this bond has been furnished to comply with a statutory or other legal requirement in the location of the Project, any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein.  When so furnished, the intent is that this Bond shall be construed as a statutory bond and not as a common law bond.

AR 1318.

---

[3] The Government takes the position that using the SF 24 was not mandatory even though FAR 28.106-1 states that the form "shall be used . . . when a bid bond . . . is required."  FAR 28.106-1.

After identifying Leeward as the lowest bidder, the Army requested information to perform a technical review.  AR 1362.  On December 14, 2021, Leeward completed the Army's pre-award survey.  AR 1364.  On December 16, 2021, Leeward submitted supplemental information it inadvertently omitted from its pre-award survey.  AR 1994.  On December 27, 2021, Leeward responded to the Army's request for supplemental responses to the technical analysis.  AR 1999. Shortly after providing these responses, the Army sent an email to Leeward on January 4, 2022, stating that it determined Leeward "appear[s] to be technically qualified" and "is a responsive and responsible contactor for the project."  AR 2074.  The Army also sought responses to additional questions that would need to be addressed "during the contract period;" however, none of the questions related to Leeward's bid bond.  *Id.*

Leeward's work never got off the ground.  On January 26, 2021, it received a letter from the Army rejecting its bid as nonresponsive.  AR 2080.  The Army's Contracting Officer ("CO") determined the AIA Form A310 includes "limitations which differ significantly from the requirements of FAR provision 52.228-1."  *Id.*  According to the CO, the form impermissibly limits liability to "the difference . . . between the amount specified in said bid and the larger amount for which the [Army] may in good faith contract with another party."  *Id.*  The CO interpreted this limitation as prohibiting recovery of all excess reprocurement costs—*e.g.*, administrative costs or the costs of in-house government performance.  *Id.*  In support of his conclusion, the CO cited two GAO decisions "specific on this issue."  *Id.* (citing *G2G* and *Matter of: Pac. Dredge & Constr., LLC*, B-418900, 2020 WL 5702107 (Comp. Gen. Sept. 18, 2020)).  For these reasons, the Army rejected Leeward's bid and instead awarded the contract to Mohawk as the next lowest bidder.  AR 2080, 2878.

The Army attempted to notify unsuccessful bidders of the award to Mohawk on April 4

and 6, 2022.  AR 2879–86.  However, the notification email attached a letter dated January 14, 2022, that erroneously indicated Leeward was the awardee.  *Id.*  After filing the Administrative Record in this matter, the Army learned that it had attached the wrong letter to the award notification, and it promptly corrected the mistake by issuing a new letter on April 20, 2022.  *See* Govt.'s Unopposed Mot. to Complete the Admin. R. at 2, ECF No. 16; AR 2887–94.

**B.    Procedural History**

On February 3, 2022, Leeward filed a GAO protest challenging the Army's decision to reject its bid as nonresponsive.  AR 2545.  The Army subsequently moved to dismiss Leeward's protest.  AR 2597.  On March 3, 2022, the GAO summarily dismissed the case.  AR 2731.  The GAO based the dismissal on the same two prior GAO decisions cited in the CO's decision letter— *G2G* and *Pacific Dredge and Construction*—which held that the AIA Form A310 did not comply with FAR 52.228-1(e).  *Id.*  The GAO explained that the form limits liability to only replacement contract costs and the savings clause did not clearly or unambiguously evince the bidder's intent to incorporate FAR 52.228-1(e).  AR 2734–35.

On April 1, 2022, Leeward filed its Complaint in this Court.  *See* Pl.'s Compl., ECF No. 1.  On April 25, 2022, Leeward filed a Motion for Judgment on the Administrative Record.  *See* Pl.'s Mot. for J. on Admin. R., ECF No. 18.  First, Leeward contends the Army erred in interpreting the AIA Form A310 as noncompliant with FAR 52.228-1(e).  *Id.* at 20.  Second, Leeward contends the Army misinterpreted FAR 52.228-1(e) because the regulation provides that the bidder is personally liable for any reprocurement costs regardless of any liability limitation in its bid bond.  *Id.* at 20–21.  Lastly, Leeward argues that even if the AIA Form A310 does not comply with FAR 52.228-1(e), the Army acted arbitrarily and capriciously in rejecting Leeward's bid for two reasons: (1) any irregularity was immaterial; and (2) the Army failed to treat Leeward and Mohawk

equally by waiving an error in Mohawk's bid while refusing to waive Leeward's bid bond irregularity. *Id.* at 21.

On May 5, 2022, the Government filed a Cross-Motion for Judgment on the Administrative Record. *See* Govt.'s Cross-Mot. for J. on Admin. R., ECF No. 22. On the same day, Mohawk filed its Cross-Motion for Judgment on the Administrative Record. *See* Def.-Intervenor's Cross-Mot. for J. on Admin. R., ECF No. 21. The Government and Mohawk contend that the Army properly rejected Leeward's bid because the AIA Form A310 fails to guarantee payment of all reprocurement costs in the case of default, and the Army reasonably relied on prior GAO decisions that held the same with respect to the identical bid bond form. ECF No. 22 at 25; ECF No. 21 at 15–16. They further contend that the Army did not arbitrarily and capriciously reject Leeward's bid because the liability limitation was a material irregularity and not subject to waiver, while the error in Mohawk's bid was an obvious clerical error that the Army had authority to correct. ECF No. 22 at 20; ECF No. 21 at 25. Lastly, Mohawk argues that even if the Army acted irrationally with respect to Leeward's bid bond, such a mistake is harmless error because Leeward's bid would have been rejected anyway after further analysis by the Army. ECF No. 21 at 31.

The motions are now fully briefed. *See* Pl.'s Reply to Govt.'s Cross-Mot., ECF No. 24; Pl.'s Reply to Def.-Intervenor's Cross-Mot., ECF No. 25; Govt.'s Reply, ECF No. 29. The Court heard oral argument on June 1, 2022.

## II.   LEGAL STANDARDS

### A.   Motion for Judgment on the Administrative Record

Rule 52.1(c) of the Rules of United States Court of Federal Claims ("RCFC") governs motions for judgment on the administrative record. Such motions are "properly understood as . . . an expedited trial on the record." *Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir.

2005).  In contrast to the standard for summary judgment, "the standard for judgment on the administrative record is narrower" and involves determining, "given all the disputed and undisputed facts in the administrative record, whether the plaintiff has met the burden of proof to show that the [challenged action or] decision was not in accordance with the law."  *Martinez v. United States*, 77 Fed. Cl. 318, 324 (2007) (citing *Bannum*, 404 F.3d at 1357).  Therefore, a genuine issue of disputed fact does not prevent the Court from granting a motion for judgment on the administrative record.  *See Bannum*, 404 F.3d at 1357.

**B.     Bid Protest Standard of Review**

The Tucker Act, as amended by the Administrative Dispute Resolution Act of 1996 ("ADRA"), provides the Court of Federal Claims with "jurisdiction to render judgment on an action by an interested party objecting to . . . the award of a contract or any alleged violation of statute or regulation in connection with a procurement . . . ."  28 U.S.C. § 1491(b)(1).  In such actions, the Court "review[s] the agency's decision pursuant to the standards set forth in section 706" of the Administrative Procedure Act ("APA").  28 U.S.C. § 1491(b)(4); *see Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1350 (Fed. Cir. 2004).  Accordingly, the Court examines whether an agency's action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A); *see Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 n.5 (Fed. Cir. 2001).  Under such review, an "award may be set aside if either: (1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure."  *Impresa*, 238 F.3d at 1332 n.5.  To prevail in a bid protest, "a protestor must show a significant, prejudicial error in the procurement process."  *WellPoint Mil. Care Corp. v. United States*, 953 F.3d 1373, 1377 (Fed. Cir. 2020) (quoting *Alfa Laval Separation, Inc. v. United States*, 175 F.3d 1365, 1367 (Fed.

Cir. 1999)).  A protestor establishes prejudice by showing "that there was a substantial chance it would have received the contract award but for that error." *Alfa Laval*, 175 F.3d at 1367 (quoting *Statistica, Inc. v. Christopher*, 102 F.3d 1577, 1582 (Fed. Cir. 1996)).

In reviewing an agency's procurement decisions, the Court does not substitute its judgment for that of the agency.  *See Redland Genstar, Inc. v. United States*, 39 Fed. Cl. 220, 231 (1997); *Cincom Sys., Inc. v. United States*, 37 Fed. Cl. 663, 672 (1997); *see also M.W. Kellogg Co. v. United States*, 10 Cl. Ct. 17, 23 (1986) (holding that "deference must be afforded to an agency's . . . procurement decisions if they have a rational basis and do not violate applicable law or regulations.").  The disappointed bidder "bears a heavy burden," and the CO is "entitled to exercise discretion upon a broad range of issues."  *Impresa*, 238 F.3d at 1332 (citations and quotes omitted). This burden "is not met by reliance on [the] pleadings alone, or by conclusory allegations and generalities." *Bromley Contracting Co. v. United States*, 15 Cl. Ct. 100, 105 (1988); *see Campbell v. United States*, 2 Cl. Ct. 247, 249 (1983).  A procurement decision is rational if "the contracting agency provided a coherent and reasonable explanation of its exercise of discretion."  *Impresa*, 238 F.3d at 1333.  "[T]hat explanation need not be extensive." *Bannum, Inc. v. United States*, 91 Fed. Cl. 160, 172 (2009) (citing *Camp v. Pitts*, 411 U.S. 138, 142–43 (1973)).

In a protest, the Court applies de novo review to any questions of law.  *NVT Techs., Inc. v. United States*, 370 F.3d 1153, 1159 (Fed. Cir. 2004).  The interpretation of either a bid bond (analogous to a contract), a solicitation, or procurement regulations present such questions.  *See id.*; *Balboa Ins. Co. v. United States*, 775 F.2d 1158, 1160 (Fed. Cir. 1985) (characterizing a surety as a three-party agreement whereby the principal becomes liable for the debt of an obligor to an obligee); *United States v. Boeing Co.*, 802 F.2d 1390, 1393 (Fed. Cir. 1986) ("The interpretation of regulations which are incorporated into government contracts is a question of law which this

court is free to resolve.").  Regardless of whether the decision on review is that of the contracting officer or of the GAO, the Court of Federal Claims does not afford deference on questions of law. *See VS2, LLC v. United States*, 155 Fed. Cl. 738, 767 (2021); *CBY Design Builders v. United States*, 105 Fed. Cl. 303, 340 (2012) (holding that the degree of deference applied under the arbitrary-and-capricious standard does not change depending on whether the court is reviewing the agency-level decision or the GAO's decision in a subsequent protest, and "[n]o 'special' amount of deference, covering questions of law as well as the ultimate decision being reviewed, can be gleaned from the . . . Federal Circuit precedents")); *see also E.W. Bliss Co. v. United States*, 33 Fed. Cl. 123, 135 (1995), *aff'd*, 77 F.3d 445 (Fed. Cir. 1996).  Nor is the Court bound by GAO decisions, although such decisions are nonetheless considered "instructive" in the context of bid protests.  *Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1038 n.4 (Fed. Cir. 2009).

### III. DISCUSSION

Although this protest presents a matter of first impression, well-established principles of contract and statutory interpretation guide the Court's decision.  First, as a matter of law, the Court finds the AIA Form A310 does not comply with FAR 52.228-1(e), and thus did not meet the requirements of the IFB.  Not only is the language of the bid bond's savings clause ineffective as an incorporation by reference, it also is ambiguous, at best, whether the form intends to operate as a statutory bond in response to the requirements of a solicitation in a federal government procurement.  Second, the bid bond irregularity was material and not subject to waiver.  Moreover, Leeward cannot succeed on a disparate evaluation challenge because its bid did not contain a substantially similar error as Mohawk's.  Lastly, the Army acted rationally in rejecting Leeward's bid because the irregularity presented a defense to enforcement.  The Army also reasonably relied on two GAO decisions addressing this exact issue that correctly concluded the bid bond

irregularity was a material defect.  Because Leeward fails to carry its burden of proving that the AIA Form A310 complied with the IFB's requirements, or that the Army acted arbitrarily and capriciously in determining its bid was nonresponsive, Leeward is not entitled to judgment on the record.

**A.      The AIA Form A310 Does Not Comply With FAR 52.228-1(e) as a Matter of Law.**

The crux of this dispute is whether the AIA Form A310 limits the Army's ability to recover all reprocurement costs in the event it terminated Leeward's award for default, as required by the IFB (pursuant to FAR 52.228-1).  The parties do not dispute that the bid bond's language limits the surety's liability, such that the bond does not cover excess costs (like administrative costs or the cost of in-house government performance).  ECF No. 18 at 25.  The question at issue thus turns on the legal effect of the bid bond's savings clause, which Leeward contends unambiguously incorporates FAR 52.228-1(e) by reference.  ECF No. 18 at 25.  Taking a slightly different tack, Leeward argues in its Reply that the savings clause effectively incorporates FAR 52.228-1(e) because the bid bond operated as a statutory bond.  ECF No. 24 at 13.  Based on this construction, Leeward argues that the AIA Form A310 guaranteed the Army recovery of all reprocurement costs stemming from default, even if the face of the bid bond seemingly excludes excess costs.  *Id.*  The Government and Mohawk respond that the savings clause is ineffective as an incorporation by reference because it does not affirmatively cite FAR 52.228-1(e), and it is ambiguous whether the form is meant to operate as a statutory bond under this set of facts.  ECF No. 22 at 25; ECF No. 21 at 29.

1.  The AIA Form A310 Does Not Incorporate FAR 52.228-1(e) By Reference.

Incorporation by reference "provides a method for integrating material from various documents into a host document . . . by citing such material in a manner that makes clear that the

material is effectively part of the host document as if it were explicitly contained therein." *Zenon Env't, Inc. v. U.S. Filter Corp.*, 506 F.3d 1370, 1378 (Fed. Cir. 2007) (quoting *Cook Biotech Inc. v. Acell, Inc.*, 460 F.3d 1365, 1376 (Fed. Cir. 2006)).  To incorporate material by reference, "the incorporating contract must use language that is *express* and *clear*, so as to leave no ambiguity about the identity of the document being referenced, nor any reasonable doubt about the fact that the referenced document is being incorporated into the contract." *Northrop Grumman Info. Tech., Inc. v. United States*, 535 F.3d 1339, 1344 (Fed. Cir. 2008).  Although there are no "magic words," the language "must explicitly, or at least precisely, identify the written material being incorporated and must clearly communicate that the purpose of the reference is to incorporate the referenced material into the contract." *Id.* at 1345–46 (citation omitted); *see Callaway Golf Co. v. Acushnet Co.*, 576 F.3d 1331, 1346 (Fed. Cir. 2009) ("[M]ere *reference* to another [document] is not an *incorporation* of anything therein.").  Including information such as the "title, date, parties to, or section headings of any document to be incorporated" serve as compelling evidence that the parties intend to incorporate the extraneous document or regulation.  *Northrop Grumman*, 535 F.3d at 1346.

The Federal Circuit disfavors wholesale incorporation by reference of a body of regulations.  In *Smithson v. United States*, the Federal Circuit considered whether a loan and security agreement incorporated all regulations of the Farmers Home Administration by stating the agreement "is subject to the present regulations of the [agency] and to its future regulation not inconsistent with the express provisions hereof."  847 F.2d 791, 794 (Fed. Cir. 1988).  The plaintiff sued for breach of contract under a theory founded on an agency regulation not stated in the agreement.  *Id.* at 793.  The Federal Circuit affirmed the court's dismissal of the claim because it was "highly doubtful" the agency intended to expose itself to such expansive liability by

12

incorporating all agency regulations into the agreement.  *Id.* at 794.  Wholesale incorporation by reference would have made the agency subject to over 1,200 pages of regulations, many of which were irrelevant to the subject matter of the deal.  *Id.*  The Federal Circuit concluded that if this were the parties' purpose "they would have explicitly so provided."  *Id.*  In the absence of such express term, the Court declined to recognize "'[a] wholly new ground of obligation . . . by mere implication' from a general and ambiguous contract provision."  *Id.* (internal citation omitted); *see Peterson Indus. Depot, Inc. v. United States*, 140 Fed. Cl. 485, 491 (2018) (holding that a contract provision recognizing the parties' obligation to comply with certain federal statutes was insufficient to incorporate by reference certain railroad maintenance standards and safety reports).

To effectively incorporate a regulation by reference, a contract must specifically refer to the regulation so as to give notice to the agency.  This can be accomplished, for example, by attaching the text of the incorporated regulation as an exhibit to the agreement.  *See Northrop Grumman*, 535 F.3d at 1344 (citing *So. Cal. Edison Co. v. United* States, 226 F.3d 1349, 1357 (Fed. Cir. 2000)).  Requiring overt reference to the incorporated material comports with case law from other circuits around the country that similarly seeks to protect a contracting party from undue surprise.  *See id.* at 1345 (citing *Standard Bent Glass Corp. v. Glassrobots Oy*, 333 F.3d 440, 447 (3d Cir. 2003) ("Incorporation by reference is proper where the underlying contract makes clear reference to a separate document, the identity of the separate document may be ascertained, and incorporation of the document will not result in surprise or hardship."); *PaineWebber, Inc. v. Bybyk*, 81 F.3d 1193, 1201 (2d Cir. 1996) (noting that under common law "the paper to be incorporated into a written instrument by reference must be so referred to and described in the instrument that the paper may be identified beyond all reasonable doubt")).

In this case, the language of the AIA Form A310 is too broad and indefinite to constitute a

valid incorporation by reference of any particular statutory or other legal requirement, specifically FAR 52.228-1(e).  The savings clause provides that:

> When this bond has been furnished to comply with a statutory or other legal requirement in the location of the Project, any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein.

AR 1318.  The apparent intent of this clause is to bring the bid bond into compliance with any statute or legal requirement in the location of the project that may conflict with its terms.  But in doing so, it fails to refer to any relevant statute or legal requirement with the "detailed particularity" required by the Federal Circuit.  *Northrop Grumman*, 535 F.3d at 1344.  The form does not cite to the FAR at all (let alone any particular provision of the FAR relevant to bid bonds), nor does it not state which provision(s) of the bid bond should be deleted in the event of a conflict.  Like the contract provision at issue in *Smithson*, the form attempts an open-ended "wholesale incorporation of a mass of regulations," such that any statute or legal requirement from a nearly indefinable body of code could apply.  847 F.2d at 794.  And unlike the contract provision at issue in *Southern California Edison*, Leeward's bond did not use the judicially-approved language of incorporation or attach a copy of the FAR regulation intended to be incorporated.  *See* 226 F.3d at 1357.  This absence of notice is exactly the type of issue the Federal Circuit's incorporation-by-reference precedent has sought to protect against.

As such, the AIA Form A310's savings clause is not a valid incorporation by reference of FAR 52.228-1(e).

2.  <u>The AIA Form A310 Does Not Unambiguously Operate as a Statutory Bond When Furnished in Response to an IFB.</u>

Perhaps recognizing the weakness in its incorporation by reference argument, Leeward focuses its Reply on the statutory nature of the bid bond.  It contends the AIA Form A310 complies

with FAR 52.228-1(e) because the savings clause states, "[w]hen [this Bond has been furnished to comply with a statutory or other legal requirement in the location of the Project] the intent is that this Bond shall be construed as a statutory bond and not as a common law bond."  ECF No. 24 at 10 (quoting AR 1318).  According to Leeward, if a bid bond is a statutory bond, courts either "read omitted statutory/regulatory provisions into the bond" or "hold that a particular statutory/regulatory provision overrides a conflicting bond provision." *Id.* at 11.  The Government replies that the bid bond should not operate as a statutory bond because it is ambiguous whether it was furnished to comply with a "statutory or other legal requirement in the location of the Project." ECF No. 29 at 9 (quoting AR 1318).

As with any contract, courts "begin with the plain language" when interpreting a bid bond. *McAbee Constr., Inc. v. United States*, 97 F.3d 1431, 1435 (Fed. Cir. 1996); *Am. Cas. Co. of Reading, Pa. v. Irvin*, 426 F.2d 647, 650 (5th Cir. 1970) ("[T]he liability of a surety on a bond which is plain and unambiguous is governed, like any other contract, by the intention of the parties as expressed in the instrument.").  A contract term is ambiguous only "when it is susceptible to two reasonable interpretations." *A–Transp. Nw. Co., Inc. v. United States*, 36 F.3d 1576, 1584 (Fed. Cir. 1994).  Its contents must be read as a whole and in "a manner that harmonizes and gives reasonable meaning to all of its provisions." *Banknote*, 365 F.3d at 1353; *NVT Techs.*, 370 F.3d at 1159.  The plain language of the contract "must be given that meaning that would be derived from the contract by a reasonably intelligent person acquainted with the contemporaneous circumstances." *TEG–Paradigm Envtl., Inc. v. United States*, 465 F.3d 1329, 1338 (Fed. Cir. 2006) (quoting *Metric Constructors, Inc. v. Nat'l Aeronautics & Space Admin.*, 169 F.3d 747, 752 (Fed. Cir. 1999)).

Leeward does not cite a case in this circuit on the proper application of a statutory bond.

It instead cites several federal and state court cases.  ECF No. 24 at 11.  For example, it relies on *Trustees for Michigan Laborers' Health Care Fund v. Warranty Builders, Inc.*, where a court in the Eastern District of Michigan considered whether the notice requirement in a payment bond should be enforced in accordance with the bond language.  921 F. Supp. 471, 475 (E.D. Mich. 1996).  Even though the terms of the payment bond provided a party 90 days after completion of the work to make a claim against the payment bond, the defendant sought to apply under Michigan law an additional 30-day period after commencement of the work.  *Id.*  The payment bond included a savings clause identical to the AIA Form A310.  *Id.*  The court ultimately applied the 90-day notice language of the payment bond, but grounded its decision on the absence of directly conflicting terms between the bond and statute.  *Id.*  The court determined that the savings clause "only acts to delete any contractual provisions which are in conflict with the law," not incorporate omitted statutory provisions.  *Id.* at 477.  In this sense, the court endorsed application of the savings clause, but limited it to situations where provisions are directly in conflict with a law to prevent the surety from profiting "by its own ill-drafted bond notice requirements."  *Id.*

The problem with applying the AIA Form A310 as a statutory bond here, as in *Trustees for Michigan*, is the distinguishable set of facts underlying a federal government procurement.  Under the interpretation advocated by Leeward, if the AIA Form A310 is a statutory bond, it automatically reads in—and therefore complies with—FAR 52.228-1(e), even if it is not expressly stated in the form's terms or incorporated by reference.  ECF No. 24 at 23.  But unlike in *Trustees for Michigan*, where the question at issue was whether a Michigan statutory provision should be read into a bond posted for a public school construction contract, the bid bond at issue in this case is not clearly furnished in response to a "statutory or other legal requirement in the location of the project."  921 F. Supp. at 475.  Indeed, Leeward's claim that its bid bond constituted a statutory

16

bond is belied by ambiguity in two ways.

First, the FAR is a federal regulation, not a statute. Although there seems no reason to draw a distinction between a federal regulation and a statute in the context of the bond's language, FAR 52.228-1 imposes an obligation on the agency's contracting officer with respect to the content of the solicitation and contract. *See* FAR 28.101-2(a) ("The contracting officer shall insert a provision or clause substantially the same as the provision at 52.228-1, Bid Guarantee, in solicitations or contracts that require a bid guarantee or similar guarantee."). Individual bidders become bound by the requirements of FAR 52.228-1 only through its insertion in the terms of the solicitation and the contract awarded by the agency. The phrase "other legal requirement" in the AIA Form A310 is broad (and not adequately defined by the parties) such that it may encompass a federal regulation, but the problem remains that Leeward furnished its bid bond in response to the IFB. This creates significant ambiguity as to whether the bid bond was intended to be construed as a statutory bond in this case. Leeward has cited no cases addressing application of a statutory bond to a federal procurement; instead, it cites cases primarily concerning state and city construction contracts or deals between private parties involving questions about the application of state statutes. ECF No. 24 at 11 (citing *Trustees for Michigan*, 921 F. Supp. at 475 (state public school construction contract involving Michigan Public Works Act); *Williamson v. Williams*, 247 N.W. 704, 705 (Mich. 1933) (state highway construction contract involving Michigan statutory provisions requiring payment bonds of contractors on public works, Comp. Law 1929 §§ 13132, 13134); *Mayor and City Council of Baltimore v. Fidelity & Deposit Co. of Md.*, 282 Md. 431, 441 (1978) (city contract for construction of storm drain outfall involving Maryland's Little Miller Act); *Charles City v. Rasmussen*, 232 N.W. 137, 139 (Iowa 1930) (city contract for street improvements involving Iowa statutory provision requiring contractor and bondsmen to keep

improvements in good repair, Code 1924 § 6003,); *Am. Cas. Co. of Reading*, 426 F.2d at 648 (bond posted by livestock dealer in Georgia pursuant to the federal Packers And Stockyards Act of 1921). The applicability of these cases to a bid bond submitted in response to a federal agency's solicitation is unclear. As such, it is ambiguous whether the AIA Form A310 should operate as a statutory bond in this case.

Second, the qualifying phrase "location of the Project" further complicates the applicability of the savings clause to this case. A "statute or other legal requirement in the location of the Project" reasonably refers to state or local laws and ordinances in the locality where the project will be performed. The AIA Form A310 presumably includes this phrase to ensure that contractors can use the standard-form bid bond in any jurisdiction without the concern that state or local rules applicable in a particular jurisdiction will invalidate the bond. There is no indication, however, that the phrase should be applied so broadly as to encompass any federal statute, regulation, or other legal requirement relevant to a federal procurement—and specifically here, the FAR. Indeed, the FAR does not apply because of the location of the project but rather because of the entity— *i.e.*, a federal executive agency—that is seeking to acquire supplies and services with appropriated funds. *See* FAR 104.1 ("The FAR applies to all acquisitions as defined in part 2 of the FAR, except where expressly excluded."); FAR 2.101 (defining "acquisition"). Although the federal government may own or possess the dam and/or the land on which it is situated, the location of the project is Honesdale, Pennsylvania. AR 263. Even if Leeward furnished its bond to comply with a federal regulation (and not simply the terms of the IFB), it did not do so to comply with a "legal requirement in the location of the Project," AR 1318, meaning the statutory bond language of the savings clause is ineffective in this case.

Accordingly, the AIA Form A310 does not effectively incorporate FAR 52.228-1(e)

because it cannot be unambiguously construed to operate as a statutory bond where it was submitted with a bid in response to the IFB.  Because its bond did not comply with FAR 52.228-1(e), Leeward is not entitled to judgment on this ground.[4]

**B.   The Army Acted Rationally in Rejecting Leeward's Bid.**

Regardless of whether the AIA Form A310 was noncompliant with the IFB, Leeward must show that the Army acted arbitrarily and capriciously in rejecting its bid as nonresponsive.  The parties offer competing arguments on this point, raising three questions for the Court's resolution: (1) whether the noncompliant language in Leeward's bid bond was an immaterial defect; (2) whether the Army treated bidders unequally by correcting an error in Mohawk's bid while rejecting Leeward's bid as nonresponsive; and (3) whether the Army reasonably rejected the bond because the noncompliant language created a defense to enforcement.

1.   The Defect in Leeward's Bid Bond Was Material.

Leeward contends the Army's rejection of its bid lacked a rational basis because—even assuming Leeward's bid bond was defective—the agency should have concluded that any irregularity was immaterial and subject to waiver.  ECF No. 18 at 30.  According to Leeward, the

---

[4] Leeward also contends the Army misinterpreted FAR 52.228-1(e) in determining its bid bond was noncompliant because the regulation imposes liability for all reprocurement costs on the bidder, whereas the bid bond need only be available to offset some portion of that amount.  ECF No. 18 at 28.  This interpretation is easily rejected as inconsistent with a plain reading of the regulation.  *See Shoshone Indian Tribe of the Wind River Rsrv. v. United States*, 364 F.3d 1339, 1345 (Fed. Cir. 2004) (noting that the plain language of a regulation is controlling if a regulation is clear and unambiguous).  FAR 52.228-1(e) provides that a bidder is liable for "any cost of acquiring the work that exceeds the amount of its bid" and that the "bid guarantee is available to offset the difference."  The Court agrees with the Government that if a bid bond limits liability in a manner that excludes payment of excess costs then, at least to some degree, it is not "available to offset" the difference between the amount of the bidder's bid and *any cost* of acquiring the work.  Based on the plain language, the regulation unambiguously requires a bid bond to protect the agency in the event of default to the same extent that the bidder is liable.  To accept Leeward's interpretation would undercut the very purpose of the bid guarantee itself.

immateriality is demonstrated by the fact that the Army would have received the entire benefit of Leeward's bid bond because the difference between Leeward's bid and Mohawk's bid (as the next-lowest bidder) far exceeded the penal sum of its bond.  ECF No. 18 at 32.  In other words, the bond's liability limitation would have had no material effect on the Army's recovery in the event of default.  *Id.*  To support its argument, Leeward relies on FAR 14.405, which provides that an agency shall give offerors the opportunity to cure or shall waive minor informalities or irregularities in bids.  FAR 14.405 (defining a "minor informality or irregularity" as "one that is merely a matter of form and not of substance").

It is well settled that "a proposal that fails to conform to the material terms and conditions of the solicitation should be considered unacceptable[.]"  *E.W. Bliss*, 77 F.3d at 448; *see* FAR 14.301(a) ("To be considered for award, a bid must comply in all material respects with the invitation for bids").  A term is material if it is expressly stated in the solicitation and it adds "something important to the evaluation of the offer, is binding on the offeror, or has a more than negligible impact on the price, quantity, or quality of the bid."  *ManTech Advanced Sys. Int'l, Inc. v. United States*, 141 Fed. Cl. 493, 506–07 (2019) (collecting cases).  An agency is entitled to a strong presumption of regularity and good faith in evaluating whether a bid is responsive.  *Am– Pro Protective Agency, Inc. v. United States*, 281 F.3d 1234, 1239–41 (Fed. Cir. 2002).

One type of material deficiency occurs when a bidder submits a defective bid bond or uncertainty exists at the time of bid opening that the bidder has furnished a sufficient, legally binding bond.  *Interstate Rock Prods., Inc. v. United States*, 50 Fed. Cl. 349, 361 (2001).  In such case, the bid itself is rendered nonresponsive and generally requires rejection.  FAR 28.101–4(a); *see* FAR 52.288-1(a).  In limited circumstances, the FAR provides that an agency shall waive noncompliance with a solicitation requirement for a bid guarantee unless it determines acceptance

would be detrimental to the Government's interest.  FAR 28.101-4(c) (listing eight situations where noncompliance shall be waived).  The parties do not dispute that none of these waiver circumstances applied to Leeward's bid bond.

In this case, the Court finds the Army acted rationally by not waiving the irregularity in the AIA Form A310 and instead rejecting Leeward's bid as nonresponsive.  As a preliminary matter, the bid bond requirement was a material aspect of the IFB because it was binding on bidders and had a more than negligible impact on the quality of the bids.  *See ManTech Advanced*, 141 Fed. Cl. at 506–07; *see also Interstate Rock*, 50 Fed. Cl. at 366.  The Army inserted the terms of FAR 52.228-1(e) into the IFB, making the bid bond requirements mandatory, and a bidder's failure to comply would have put the agency at economic risk of not recovering all reprocurement costs.  AR 290–91.  Such irregularity was most certainly not "merely a matter of form" but rather "of substance."  FAR 14.405.  Leeward's attempt to construe the liability limitation in its bid bond as immaterial is unpersuasive because it discounts the uncertainty accompanying the amount of any future reprocurement costs.  Leeward assumes the Army would have accepted Mohawk's next lowest bid in the event of Leeward's default, but there was no guarantee of that.  Mohawk's bid expired on April 6, 2022.  AR 2663.  If the Army had to resolicit the contract, the difference between Leeward's bid and the bid of a replacement contractor may not have been so large.  The Army therefore acted rationally in not waiving a material defect that could have subjected it to prospective economic risks.  Indeed, FAR 28.101-4 *required* the Army to reject Leeward's bid because its bid bond was noncompliant with IFB's bid bond requirements.

2.  <u>Leeward Does Not State a Valid Disparate Evaluation Challenge Against the Army for Correcting a Clerical Error in Mohawk's Bid.</u>

Leeward also contends the Army acted arbitrarily and capriciously by failing to treat all bidders equally during the evaluation process.  ECF No. 18 at 34.  It argues the Army gave

Mohawk preferential treatment by waiving a mistake in Mohawk's pricing proposal, whereas it rejected Leeward's bid for the irregularity in its bid bond. *Id.* at 35. The Government and Mohawk respond that the Army's treatment of Mohawk's bid was rational because the IFB permitted the agency to correct obvious clerical errors. ECF No. 22 at 28; ECF No. 21 at 19–20. The Government also argues that a claim for disparate evaluation must be founded on identical errors in the two bids. ECF No. 22 at 28.

To prevail on a claim of disparate evaluation, a protestor must show that the agency unreasonably downgraded its proposal for deficiencies that were "substantively indistinguishable" from or "nearly identical" to those contained in other proposals. *Office Design Grp. v. United States*, 951 F.3d 1366, 1372 (Fed. Cir. 2020) (citing *Enhanced Veterans Sols., Inc. v. United States*, 131 Fed. Cl. 565, 588 (2017)); *Red River Comput. Co. v. United States*, 120 Fed. Cl. 227, 238 (2015). A protestor also may prevail by showing the agency inconsistently applied objective solicitation requirements among it and the other offerors. *Sci. Applications Int'l Corp. v. United States*, 108 Fed. Cl. 235, 272 (2012) (citing *BayFirst Sols., LLC v. United States*, 102 Fed. Cl. 677 (2012)). If a protestor does not meet this threshold showing, then the court should dismiss the claim, otherwise it "would give a court free reign to second-guess the agency's discretionary determinations underlying its technical ratings." *Office Design Grp.*, 951 F.3d at 1372.

The Court finds that Leeward has not stated a valid disparate evaluation argument because the clerical error in Mohawk's bid was substantially different from the bid bond irregularity that caused Leeward's rejection. While the Army determined Leeward's bid was nonresponsive for including a limitation on liability that significantly differed from FAR 52.228-1, the Army made a correction to the calculation of Mohawk's pricing proposal based on an apparent clerical error. AR 1362–63. Specifically, Mohawk stated a unit price of $61.71/SY at line item 12 of its bidding

schedule.  AR 1363.  Based on this unit price, the total cost of the line item at a quantity of 31,000 would have been $1,913,010, making Mohawk the fourth highest bidder instead of the runner-up. As this unit price/total cost was exorbitantly more expensive than other bidders, the Army reasonably concluded that Mohawk's unit price contained a decimal point error.  *Id.*  The Army thus adjusted the total estimated price accordingly by adjusting the unit price to $6.17, as was allowed by the IFP.  *Id.*; AR 270 ("Obviously misplaced decimal points will be corrected[.]"). This alleged unequal treatment involving the error in Mohawk's bid was not "substantively indistinguishable" from the irregularity in Leeward's bid.  *Office Design Grp.*, 951 F.3d at 1372.

   3.   The Language of Leeward's Bid Bond Created a Defense to Enforcement.

   The Government and Mohawk argue that the Army acted rationally in rejecting Leeward's bid because, when faced with ambiguity as to the bid bond's scope of liability, it reasonably deferred to two GAO decisions—*G2G* and *Pacific Dredge and Construction*—that found the very same bid bond noncompliant.  ECF No. 22 at 22; ECF No. 21 at 15–16.

   In those cases, the contracting agencies found the liability limitation in the AIA Form A310 inconsistent with the full scope of protection required by FAR 52.228-1(e) and rejected the protestors' bids as nonresponsive.  *See G2G*, B-416502, 2018 WL 4679148, at *2; *Pac. Dredge & Constr.*, B-418900, 2020 WL 5702107, at *2.  Like Leeward, the protestor in *G2G* argued that the bid bond incorporated FAR 52.228-1(e) through the savings clause, and thus the conflicting liability limitation was deemed deleted.  *See G2G*, B-416502, 2018 WL 4679148, at *3.  In reviewing both protests, the GAO defined the determinative question as "whether the bond establishes unequivocally at the time of bid opening that the bond is enforceable against the surety should the bidder fail to meet its obligations."  *Id.* at *3; *see Pac. Dredge & Constr.*, B-418900, 2020 WL 5702107, at *4 ("The test applied in determining the responsiveness of a bid is whether

the bid as submitted is an unequivocal offer to perform the exact thing called for in the IFB . . . ."). It held that "[a] bond is defective and the bid must be rejected" under FAR 28.104-1 "[i]f the agency cannot determine definitively from the bid bond documents that the surety would be bound" in the manner required by FAR 52.228-1(e). *G2G*, B-416502, 2018 WL 4679148, at *3. The GAO found the savings clause of the AIA Form A310 was, at best, ambiguous. *Id.* at *4. As it explained, the plain language of the bond "does not provide clear or unambiguous evidence of . . . [an] intent to incorporate by reference the solicitation requirements for a bid guarantee to include the requirements of FAR § 52.228–1." *Id.* (noting "it is not clear from the face of the protester's bid bond what is meant by the phrase 'to comply with a statutory or other legal requirement in the location of the [p]roject,'" and it cannot be inferred that "FAR § 52.228–1, in whole or in part, is the 'legal requirement' that should be 'deemed incorporated' into the bid bond."). Likewise, in *Pacific Dredge and Construction*, the GAO repeated its position that the ambiguous language in the savings clause required the agency to reject the bid. *Pac. Dredge & Constr.*, B-418900, 2020 WL 5702107, at *5. The GAO's reasoning was sound and, as explained above, legally correct.

Another judge of this court upheld an agency's determination that a bid was nonresponsive due to a defect in the bid bond where the agency similarly relied on GAO precedent. In *Interstate Rock*, the court rejected the plaintiff's claim that its bid bond complied with the terms of a solicitation despite the inadvertent omission of a penal sum in the bond. 50 Fed. Cl. at 361. While the plaintiff maintained the error was immaterial, the agency attached two GAO decisions to its responsiveness determination holding that the omission of the penal sum on a bond renders the bid bond defective. *Id.* at 351–52. Upon review, the court concluded that while it was arguable whether the omission of the penal sum was in fact a fatal error, the ambiguity nonetheless created

24

a defense to enforcement. *Id.* at 361; *see id.* at 362 ("In the view of this court, the omission of the penal sum creates a potential ambiguity and therefore a defense that either the surety or the contractor could raise as a defense to enforcement of the bid bond."). Accordingly, it held the agency acted rationally by rejecting the bid due to the risk that its validity could be challenged in future litigation. *Id.* The court further held that the agency likewise acted reasonably by relying on GAO precedent, which it found "appl[ied] the standards as set forth in the FAR in a manner that is eminently rational." *Id.* at 363.

In this case, because of the ambiguity in the plain language of AIA Form A310 and in light of two GAO decisions that found the exact same bond noncompliant, Leeward's bid bond presented a defense to enforcement warranting rejection. As the Federal Circuit recently acknowledged, an agency is not required to accept a bid if it creates a demonstrable risk of future litigation. *See Asset Prot. & Sec. Servs., L.P. v. United States*, 5 F.4th 1361, 1366 (Fed. Cir. 2021) ("[T]he government has a substantial interest in not creating opportunities for litigation . . . and [is] not obligated to accept a bid that [is] contrary to the amended terms of its solicitation."). Nor can the Court say the Army acted arbitrarily and capriciously by recognizing the ambiguity and relying on two prior GAO decisions to guide how it should proceed. AR 2080. Although GAO decisions do not constitute mandatory authority, the arbitrary-and-capricious standard asks whether an agency lacked a rational basis in making a decision. *Impresa*, 238 F.3d at 1333. In the absence of contrary holdings from the Federal Circuit or Court of Federal Claims, the Army reasonably followed two administrative protest decisions that dealt with an identical bid bond.

As such, the Court finds that the Army acted rationally in determining Leeward's bid nonresponsive. Leeward fails to carry its heavy burden of proving the agency's decision lacked a

rational basis.  Accordingly, Leeward is not entitled to judgment on this ground.[5]

## IV.  CONCLUSION

For the reasons set forth above, Leeward's Motion for Judgment on the Administrative Record (ECF No. 18) is **DENIED**, the Government's Cross-Motion (ECF No. 22) is **GRANTED**, and Mohawk's Cross-Motion (ECF No. 28) is **GRANTED**.  The Clerk is directed to enter judgment accordingly.

**SO ORDERED**.

Dated: June 17, 2022                                          */s/ Kathryn C. Davis*
                                                             KATHRYN C. DAVIS
                                                             Judge

---

[5] In light of the Court's ruling, it is not necessary to address Mohawk's arguments regarding whether the Army would likely have rejected Leeward's bid notwithstanding the bid bond issue.